IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| David Gordon Oppenheimer, | ) |
| Plaintiff, | ) ) Case No: 1:23-cv-04216 |
| v. | ) ) |
| Communication Zone, Inc., American Marketing & Publishing, LLC, Richard C. Wasmund, and John B. Kaprales, | ) ) ) ) |
| Defendants. | ) |

## COMPLAINT AND JURY DEMAND

Plaintiff, David Gordon Oppenheimer ("Oppenheimer" or "Plaintiff"), by and through his attorneys at ZLATKIN WONG LLP, for his complaint ("Complaint") against Defendants Communication Zone, Inc., American Marketing & Publishing, LLC, Richard C. Wasmund, and John B. Kaprales (collectively, "Defendants"), alleges:

## NATURE OF THE ACTION

1. This action arises under the United States Copyright Act, 17 U.S.C. §§ 101 *et seq.* and 17 U.S.C. §§ 501 *et seq.*, for copyright infringement of a work registered with the United States Copyright Office, and under the Digital Millennium Copyright Act ("DMCA") for knowing removal or alteration of copyright management information ("CMI") and knowing distribution with CMI removed in violation of 17 U.S.C. § 1202 *et seq.*

## THE PARTIES

2. Oppenheimer is an individual who is actively engaged in the business of creating and licensing photography and who resides in Asheville, North Carolina.

3. Defendant COMMUNICATION ZONE, INC. ("Comm Zone") is an Illinois corporation with a principal office to do business in Schaumburg, Illinois.

4. Defendant AMERICAN MARKETING & PUBLISHING, LLC ("AMP") is a Delaware limited liability company with a principal office to do business in DeKalb, Illinois.

5. Upon information and belief, Defendant Richard C. Wasmund ("Wasmund") is an individual residing in Cook County, Illinois and, at all relevant times, was the president of Comm Zone.

6. Upon information and belief, Defendant John B. Kaprales ("Kaprales") is an individual residing in DuPage County, Illinois and, at all relevant times, was the founder and CEO of Comm Zone.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8. Plaintiff is informed, believes, and thereon alleges that Defendants have sufficient contacts with this District generally and, in particular, with the events herein alleged, that Defendants are subject to the exercise of jurisdiction of this Court. Specifically, each of the Defendants is domiciled in this District and, upon information and belief, all of the Defendants' actions giving rise to Plaintiff's claims occurred within this District.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(a).

## FACTUAL ALLEGATIONS

10. Oppenheimer is a noted and respected professional photographer with many years of experience and considerable reputation.

11. Oppenheimer's photographs have appeared in *inter alia* Rolling Stone, MSNBC, MTV, AOL, and FUSE. The subjects of Plaintiff's photography include President Bill Clinton,

Bob Dylan, Bruce Springsteen, Carlos Santana, and Paul McCartney, among countless other instantly recognizable persons and places, including Chicago, Illinois.

12. Oppenheimer has over the years performed photography services through his own name as well as in the form and style of "Performance Impressions LLC," which is a North Carolina limited liability company in good standing.

13. Oppenheimer earns his livelihood from the creation and licensing of his images to permitted third-party licensees for compensation, as well as from selling prints of his photographs.

14. Upon information and belief, Comm Zone performs design/installation and maintenance services for low voltage communications systems, including in and around Chicago, Illinois.

15. Upon information and belief, AMP provides online marketing and advertising services for clients around the United States, including in and around Chicago, Illinois.

**Oppenheimer Creates, Registers, and Publishes the Photograph**

16. In early July 2015, Oppenheimer visited Chicago. During this visit, Oppenheimer created an aerial photograph of Wrigley Field ("Photograph") through significant skill and personal expense. Specifically, Plaintiff chartered a doors-removed helicopter and then captured the Photograph by physically operating professional camera equipment while leaning out of the doors-removed helicopter. This required skill and experience to best capture the stadium.

17. The Photograph is an original work that Oppenheimer registered with the United States Copyright Office as part of a collection of photographs. The Photograph – referenced by its contents title "Wrigley_Field_Chicago_aerialdsc_1044.jpg" – is registered with the United States Copyright Office as part of the collection *Chicago Travel and Aerial Photographs Including The Grateful Dead at Soldier Field* under Copyright Registration Number VAu 1-229-868, bearing a

July 26, 2015, effective date of registration. A copy of the copyright registration certificate for the Photograph is attached hereto as Exhibit A. The deposit copy of the Photograph submitted along with the copyright application is attached hereto as Exhibit B.

18. After submitting the Photograph for registration, Plaintiff published the Photograph through the Performance Impressions LLC website, where Oppenheimer makes his works available for print sales and licensing, and through the website Flickr.com. As is his pattern and practice, the published version of the Photograph contained copyright management information as defined under 17 U.S.C. § 1202(c), including a visible watermark complying with notice of copyright provisions (17 U.S.C. § 401(d)) on the face of the Photograph and notice of copyright embedded in the metadata of the Photograph. CMI in the metadata of the Photograph included proper notices of copyright, and notices declaring "All Rights Reserved" in addition to instructions for licensing, Oppenheimer's address, phone number, email, and the Performance Impressions website URL. On Flickr, in addition to all of the CMI set forth above, the Photograph was published alongside the notice "© 2015 David Oppenheimer" and "All Rights Reserved" and clicking the "Show EXIF" button makes all of Oppenheimer's metadata visible, containing all of the above-stated CMI. Oppenheimer does all this to distinguish his works from others, as well as to ensure that people who view the Photograph appreciate that Oppenheimer owns all rights and title to the Photograph and follow proper protocols in licensing the Photograph. Plaintiff's published version of the Photograph is attached as Exhibit C hereto bearing this subsequently added CMI on the face of the Photograph.

19. Plaintiff has complied in all respects with Title 17 of the United States Code (Copyright Act of 1976) and all other United States laws governing copyrights and has secured the exclusive rights and privileges in and to the copyright of the Photograph.

20. Since the date of creation, Plaintiff has held all the exclusive rights to the Photograph, including, without limitation, the rights to reproduce the work, to prepare derivative works, to distribute copies to the public, and to display the work publicly pursuant to 17 U.S.C. § 106.

21. Plaintiff's copyright referenced above is presently valid and subsisting, was valid and subsisting from the moment of creation, and has been valid and subsisting in all conditions precedent to the filing of this suit.

### Defendants Use the Photograph Without Authorization

22. Upon information and belief, in 2020, one or more of the Defendants (or such Defendants' authorized representatives) obtained the published version of the Photograph and reproduced, distributed, and/or displayed a modified copy of the Photograph through at least the following URLs (collectively, "Infringing URLs"):

- http://www.communicationzoneincschaumburg.com/ ("CZIS URL")
- http://communicationzoneincschaumburg.com//OptimaMedia/images/P_22448/aa23f831-95f7-4efe-ae76-8b89abf1f625.jpg ("Image URL")

23. Upon information and belief, on or around January 27, 2020, Comm Zone forwarded the Photograph, along with other photos, logos, and graphics, to AMP, whom Comm Zone had engaged to provide online advertising services for the benefit of Comm Zone.

24. Upon information and belief, Comm Zone represented and warranted to AMP that the materials provided to AMP by Comm Zone did not infringe, violate, or misappropriate any copyright.

25. Upon information and belief, as a result of Comm Zone providing the Photograph to AMP, AMP proceeded to publish the Photograph at the Infringing URLs to promote Comm Zone's services. A true and correct copy of the webpage that was displayed at the CZIS URL, as

captured on June 29, 2020, is attached hereto as Exhibit D. A true and correct copy of the infringed copy of the Photograph that is still being publicly displayed online at the Image URL, as captured on the date of this Complaint, is attached hereto as Exhibit E.

26. Oppenheimer discovered Defendants' uses of the Photograph on June 29, 2020.

**Oppenheimer Provides Notice of Copyright Infringement to Defendants**

27. On September 23, 2022, Oppenheimer, through counsel, provided notice to Defendants of Comm Zone's infringement of Oppenheimer's rights in the Photograph and demanded they cease and desist.

28. On October 21, 2022, Comm Zone's insurer responded to Oppenheimer's counsel, shifting blame with respect to the infringement of the Photograph onto AMP, and indicating that no payment whatsoever would be made to Oppenheimer with respect to the usage of the Photograph for Comm Zone's benefit.

29. After Oppenheimer's counsel attempted to receive further clarification from Comm Zone's insurer without success, on April 5, 2022, Oppenheimer's counsel sent a notice of infringement to AMP.

30. AMP responded to Oppenheimer's counsel and provided a certification that AMP had received the Photograph from Comm Zone. A true and correct copy of AMP's certification is attached hereto as Exhibit F.

31. On June 16, 2022, Oppenheimer's counsel again contacted Comm Zone's insurance provider, informing the insurance provider of AMP's certifications.

32. On June 19, 2022, Comm Zone's insurance provider (copying Wasmund) responded that the insurance provider's position was the same (i.e., that, *inter alia*, the insurer would not be making any voluntary payments with respect to Oppenheimer's claims).

**FIRST CLAIM FOR RELIEF**
**Copyright Infringement Under 17 U.S.C. § 501**
**(Against All Defendants)**

33. Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–32 of this Complaint.

34. Plaintiff owns the exclusive rights to the copyright-protected Photograph.

35. Upon information and belief, one or more of the Defendants caused the publication, copy, and display of the Photograph at each of the Infringing URLs.

36. Defendants' acts are and were performed without the permission, license, or consent of Plaintiff.

37. Defendants acted with willful disregard of the laws protecting Plaintiff's copyright.

38. Defendants infringed Plaintiff copyright in the Photograph in violation of 17 U.S.C. § 501.

39. Plaintiff has sustained and will continue to sustain substantial damage in an amount not yet fully ascertainable.

40. Plaintiff is informed, believes, and thereon alleges that the Defendants have obtained profits recoverable under 17 U.S.C. § 504. Plaintiff will require an accounting from the Defendants of all monies generated from the Photograph.

41. In the alternative and at his election, Plaintiff is entitled to seek maximum statutory damages for willful infringement by Defendants of Plaintiff's rights in the Photograph in an amount of $150,000 under 17 U.S.C. § 504(c)(2). In the event that the trier of fact does not find that Defendants willfully infringed Plaintiff's copyright in the Photograph, Plaintiff is entitled to seek maximum statutory damages in an amount of $30,000 under 17 U.S.C. § 504(c)(1).

42. Plaintiff is entitled to seek recovery of Plaintiff's attorneys' fees and costs of suit from the Defendants, pursuant to 17 U.S.C. § 505.

### SECOND CLAIM FOR RELIEF
### Vicarious Copyright Infringement
### (In the Alternative Against Wasmund and Kaprales)

43. Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–42 of this Complaint.

44. Pleading further but without waiver of the foregoing, Oppenheimer shows that at the time Comm Zone performed the infringing acts, (a) Wasmund was the president and/or other genre of principal of Comm Zone, and (b) Kaprales was the CEO, founder, and/or other genre of principal of Zencity.

45. Upon information and belief, Wasmund and Kaprales controlled nearly all decisions relating to Comm Zone and were the dominant influence of Comm Zone. Wasmund and Kaprales provided hands-on decision making with respect to the activities of Comm Zone, making most of the decisions relating to Comm Zone. Wasmund and Kaprales had the right and ability to supervise and/or control the infringing conduct of Comm Zone, and/or to stop the infringements once they began. Upon information and belief, Wasmund and Kaprales had an obvious and direct financial interest in these infringing activities of Comm Zone, because Comm Zone's use of the Photograph (and/or AMP's use of the Photograph, with the authorization of Comm Zone) on the Infringing URLs advertised and promoted the goods and services of Comm Zone, encouraging website viewers to purchase and use the services offered by Comm Zone. Infringement of the Photograph allowed Defendants to promote and sell more effectively Comm Zone's and/or Comm Zone's affiliates' services by drawing, capturing, holding, and prolonging the attention of the average online visitor, providing a direct positive impact on sales and/or the brand, public image, and reputation of Comm Zone. Accordingly, each of Wasmund and Kaprales is personally liable to Oppenheimer as a joint and/or contributory infringer or is otherwise vicariously liable for the actions of Comm Zone.

## THIRD CLAIM FOR RELIEF
### Contributory Copyright Infringement
### (In the Alternative Against Wasmund and Kaprales)

46. Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–42 of this Complaint.

47. Alternatively, Wasmund and Kaprales have intentionally induced, encouraged, caused, enabled, facilitated, and/or materially contributed to the infringements complained of herein by directly and/or indirectly promoting the infringements.

48. Upon information and belief, Wasmund and Kaprales at all relevant times were the dominant influence in Comm Zone. Wasmund and Kaprales provided hands-on decision-making with respect to the activities of Comm Zone, set and controlled the policies and protocols of Comm Zone, and established corporate rules and cultures which encouraged the infringing activities. Wasmund and Kaprales therefore had the right and ability to supervise and/or control the infringing conduct of Comm Zone – and of Comm Zone's employees, agents, and/or servants – and/or to stop the infringements once they began, but either directly refused to exercise such rights or chose to remain willfully blind to the infringing activities while creating a work environment that encouraged and enabled the same. Additionally, and upon information and belief, Wasmund and Kaprales had an obvious and direct financial interest in the infringing activities of the company Wasmund and Kaprales operated.

49. Accordingly, each of Wasmund and Kaprales is personally liable to Oppenheimer as a contributory infringer for the infringing activities of Comm Zone.

## FOURTH CLAIM FOR RELIEF
### Vicarious Copyright Infringement
### (In the Alternative Against Comm Zone)

50. Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–42 of this Complaint.

51. Pleading further but without waiver of the foregoing, Oppenheimer shows that at the time AMP (or individuals at the direction of AMP) performed the infringing acts of publishing at the Infringing URLs, AMP was an agent of Comm Zone. Specifically, Comm Zone engaged AMP to provide digital marketing services for the benefit of Comm Zone.

52. Upon information and belief, as AMP's client for whose benefit digital services were being provided by AMP, at all relevant times, Comm Zone had the authority to control all of the Infringing URLs. As a result, at all relevant times, Comm Zone had the right and ability to supervise and/or control the infringing conduct with respect to the Infringing URLs, and/or to stop the infringements once they began.

53. Upon information and belief, Comm Zone had an obvious and direct financial interest in these infringing activities of AMP, because AMP's use of the Photograph on the Infringing URLs advertised and promoted the services of Comm Zone, thereby encouraging website viewers to purchase and use Comm Zone's and/or Comm Zone's affiliates' services. Infringement of the Photograph allowed Comm Zone to promote and sell Comm Zone's and/or Comm Zone's affiliates' services more effectively by drawing, capturing, holding, and prolonging the attention of the average online visitor, providing a direct positive impact on sales and/or the brand, public image, and reputation of Comm Zone.

54. Accordingly, Comm Zone is personally liable to Oppenheimer as a joint infringer or is otherwise vicariously liable for the actions of AMP.

**FIFTH CLAIM FOR RELIEF**
**Contributory Copyright Infringement**
**(In the Alternative Against Comm Zone)**

55. Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–42 of this Complaint.

56. Alternatively, Comm Zone has intentionally induced, encouraged, caused, enabled, facilitated, and/or materially contributed to the infringements complained of herein by directly and/or indirectly promoting the infringements.

57. Upon information and belief, having obtained a copy of the Photograph without authorization from the author of such Photograph, Comm Zone had sufficient knowledge that provision of the Photograph to AMP for publication on a website promoting Comm Zone's services would infringe upon the rights of the author of the Photograph.

58. Accordingly, Comm Zone is personally liable to Oppenheimer as a contributory infringer for the infringing activities of AMP.

**SIXTH CLAIM FOR RELIEF**
**Violations of the DMCA Under Section 1202(b)**
**(Against All Defendants)**

59. Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–42 of this Complaint.

60. Plaintiff's published version of the Photograph contained CMI within the digital file of the Photograph, including identifying metadata and, *inter alia*, the identification of the author as "David Oppenheimer," as well as a plainly visible copyright notice stating "© 2015 David Oppenheimer" on the face of, and also embedded within the metadata of, the Photograph itself.

61. Upon information and belief, Defendants, or third parties at Defendants' direction and behest (discovery will reveal which), violated the DMCA by intentionally removing the Photograph's CMI, and distributing and displaying the Photograph with the CMI removed, having reasonable grounds to know that their actions would induce, enable, facilitate, and/or conceal their infringing activities.

62. Such actions further demonstrate Defendants' willful infringement of the Photograph.

63. The aforesaid actions, including without limitation, the copy of the Photograph that was reproduced, distributed, and/or displayed at each of the Infringing URLs, constitute violations of Section 1202(b) of the Copyright Act. More specifically, all instances of removal or alteration of the Photograph's CMI by any of the Defendants or at any of the Defendants' behest resulted in a separate violation of Section 1202(b)(1), and each instance of display of the Photograph without CMI resulted in a separate violation of Section 1202(b)(2).

64. Upon information and belief, Defendants knew or had reasonable grounds to know that by concealing the Plaintiff's CMI, that Defendants would induce, enable, facilitate, or conceal Defendants' infringement of Plaintiff's Photograph.

65. Upon information and belief, Defendants intentionally or knowingly concealed the Plaintiff's CMI as aforesaid, in order to conceal that Defendants' uses of the Photograph was without the authorization of Plaintiff and in violation of law.

66. As a result of Defendants' actions with regard to the Plaintiff's CMI, Plaintiff has been and will continue to be damaged in an amount as yet to be determined.

67. As a result of Defendants' actions with regard to the Plaintiff's CMI, Plaintiff is entitled to damages in the form of actual or statutory damages pursuant to 17 U.S.C. §§ 1203(b)(3) and 1203(c), costs pursuant to 17 U.S.C. § 1203(b)(4), reasonable attorneys' fees pursuant to 17 U.S.C. § 1203(b)(5), a temporary and permanent injunction pursuant to 17 U.S.C. § 1203(b)(1), and the impounding, modification, or destruction of any items involved in the violation pursuant to 17 U.S.C. §§ 1203(b)(2) and 1203(b)(6).

68. Plaintiff is entitled to a separate award of damages for each violation of 17 U.S.C.§ 1202.

## JURY DEMAND

Plaintiff requests a trial by jury for all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for judgment against Defendants as follows.

1. Pursuant to 17 U.S.C. § 502, that Defendants and Defendants' agents, servants, employees, representatives, successors, and assigns, and all persons, firms, corporations, or other entities in active concert or participation with Defendants, be permanently enjoined from directly or indirectly infringing the Plaintiff's copyrights in any manner, including generally, without limitation, reproducing, distributing, displaying, performing, or making derivative works of the Photograph;

2. That Defendants be required to perform a complete and full accounting of all profits generated by Defendants from the Photograph;

3. Pursuant to 17 U.S.C. § 504, that Defendants be required to pay actual damages and disgorgement of all profits derived by Defendants from the Defendants' acts of copyright infringement; in the alternative, upon Plaintiff's election, pursuant to 17 U.S.C. § 504, that Defendants be required to pay statutory damages up to $150,000 for each work infringed for Defendants' acts of copyright infringement and, in the event that the factfinder determines that Defendants' infringement was not willful, that Defendants be required to pay statutory damages up to $30,000 for each work infringed by the Defendants;

4. Pursuant to 17 U.S.C. § 1203(c)(2), that Defendants be required to pay actual damages and disgorgement of all profits derived by Defendants from any and all of the Defendants' violations of Plaintiff's rights under the DMCA; in the alternative, upon Plaintiff's election,

pursuant to 17 U.S.C. § 1203(c)(3)(B), that Plaintiff be awarded the maximum statutory damages of $25,000 for each individual violation of the DMCA;

5.  Pursuant to 17 U.S.C. §§ 505 and 1203(b)(4) – (5), Defendants be required to pay Plaintiff the costs of this action, prejudgment interest, and reasonable attorneys' fees; and

6.  Such other and further relief as the Court shall find just and proper.

Dated: June 29, 2023

Respectfully submitted,

**ZLATKIN WONG LLP**

By:   /s/ Ilya G. Zlatkin
      Ilya G. Zlatkin (ARDC No. 6314344)
      ZLATKIN WONG LLP
      4245 North Knox Avenue
      Chicago, Illinois 60641
      Tel: (312) 809-8022
      Fax: (312) 809-6918
      ilya@zlatkinwong.com

*Attorney for Plaintiff David Gordon Oppenheimer*